# CSM LEGAL, P.C.
Employment and Litigation Attorneys

60 East 42nd Street, Suite 4510                 Telephone: (212) 317-1200
New York, New York 10165                          Facsimile: (212) 317-1620

November 24, 2021

**BY ECF**
Honorable Vera M. Scanlon
United States Magistrate Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

         Re:      Isidoro v. Katch Inc. et al, 21-cv-1826

Your Honor:

This office represents Plaintiff in the above referenced matter. Plaintiff writes jointly with Defendants to respectfully request that, pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), the Court approve the parties' negotiated settlement ("Agreement"), attached hereto as Exhibit A, and dismiss the case with prejudice.

The terms of the Agreement provide that, in exchange for Plaintiff discontinuing this litigation and executing a release of his wage and hour claims in favor of Defendants, Defendants shall pay the total gross amount of ten thousand dollars ($10,000.00) (the "Settlement Amount"), as described in the Agreement. The Agreement was reached in the course of a November 9, 2021 mediation conducted by an EDNY mediation program session with mediator Barry Peek.

1. **Background**

Plaintiff filed this Complaint against Defendants alleging claims for unpaid minimum and overtime wages, liquidated damages, interest, attorneys' fees, and costs pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* (FLSA), the New York Minimum Wage Act, N.Y. Lab. Law § 650 *et seq.*, spread of hours pursuant to the Hospitality Industry Wage Order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 146-1.6 (herein the Hospitality Wage Order), and the annual notice and wage statement requirements of the New York Labor Law (N.Y. Lab. Law. § 195).

Plaintiff contends that he was employed at Defendants' Astoria gastropub from December of 2018 until February of 2021. He reports being classified as wait staff while being required to perform extensive amounts of untipped labor, resulting in the Defendants having taken unauthorized tips credits for the duration of his employment.

During discovery, Defendants produced documents including written policies, wage statements and clock records which were contrary to the allegations in the Complaint, and which create an inference regarding time worked in Defendants' favor. Wage records illustrate that during the time period Plaintiff worked at Katch (which was slightly over one year) he worked as a tipped employee between 20 and 40 hours each week and worked (and was compensated for)

overtime during 11 pay periods. He was paid at the applicable tipped minimum wage and overtime rate during the course of his employment. Defendants were also prepared to produce significant evidence to contradict any statements by Plaintiff that incidental side work comprised twenty percent or more of his time or that any non-tipped employees shared in the tips. The tip policies were also set forth in writing in the Handbook, and provided that only customer facing employees participated in the tip pool in accordance with federal and state law.

According to Katch's Handbook, employees are required to (and did) clock in and out for their shifts, paychecks are distributed weekly, and in bold, there is language notifying employees that if there are any payroll discrepancies, management should be notified of the details of same in writing. The Handbook, a copy if which was signed for by Plaintiff, contains a detailed section regarding how employees are paid, expressly notifying them that their wages are based on the New York City tip minimum wage rules for tipped workers. The Handbook states that "by signing the handbook – You understand that you understand and agree to how you are compensated." Plaintiff's wage statements explicitly list the specific amount of tip credit taken from the minimum wage for all hours worked, the proper tipped overtime rate, and the total amount of tip credit taken from the minimum wage.

### 2. Settlement Terms

Were he to prevail on every issue of fact, which Plaintiff concedes would be challenging given the serious factual disputes, extensive documentation, and the many defenses asserted by Defendants, Plaintiff estimates that he would be entitled to $14,850.00 in back wages.

Under *Lynn's Food*, a court may approve a settlement where it "reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. Sita Information Networking Computing USA, Inc.*, No. 07 Civ. 0086, 2008 U.S. Dist. LEXIS 46174 at *2 (E.D.N.Y. June 12, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also Kopera v. Home Depot U.S.A., Inc.*, No. 09 Civ. 8337, 2011 U.S. Dist. LEXIS 71816, at *2 (S.D.N.Y. June 24, 2011) ("If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved.").

Due to the many risks associated with litigating this matter, including defenses asserted by Defendants and serious factual disputes, Plaintiff is satisfied that the Agreement represents a fair compromise. Plaintiff also believes that the present value of the Settlement Amount outweighs the value of potentially being awarded an undetermined amount months or years from now, after trial.

Considering the foregoing risks in this case, Plaintiff believes that this settlement is an excellent result, and should be approved as fair. *See Meigel v. Flowers of the World, NYC, Inc.*, 2012 U.S. Dist. LEXIS 2359, at *2-3 (S.D.N.Y. Jan. 9, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.").

### 3. Plaintiff's Attorneys' Fees are Fair and Reasonable

Under the settlement, and in accordance with his retainer agreement with the Plaintiff, Plaintiff's counsel will receive $3,300.00 from the settlement fund as attorneys' fees and costs.

Page 3

This represents one third of the recovery in this litigation, as well as a reduction in fees from what is identified in Plaintiff's retainer agreement, which provides that forty percent of Plaintiff' recovery will be retained by the firm.

Plaintiff's counsel's lodestar in this case is $4,900.00. A copy of Plaintiff's billing record is attached as "Exhibit B." The amount provided to Plaintiff's counsel under the settlement is fair and reasonable and well within the range of fees typically awarded in cases in this Circuit. *See Pinzon v. Jony Food Corp.*, No. 18-CV-105(RA), 2018 U.S. Dist. LEXIS 87424 (S.D.N.Y. May 24, 2018) (awarding this firm a third, or 5.23 times the lodestar, in an early settlement and "recognizing the importance of encouraging the swift resolution of cases like this one and avoiding 'creat[ing] a disincentive to early settlement'—particularly where such settlement has provided Plaintiff with a substantial and speedy result." (quoting *Hyun v. Ippudo USA Holdings et al.*, No. 14-CV-8706 (AJN), 2016 U.S. Dist. LEXIS 39115, 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016).; *Shapiro v. JPMorgan Chase & Co.*, No. 11-CV-7961 (CM), 2014 U.S. Dist. LEXIS 37872, 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 21, 2014) ("Lodestar multipliers of nearly 5 have been deemed 'common' by courts in this District."); *Castaneda v. My Belly's Playlist LLC,* No. 15 Civ. 1324 (JCF) (S.D.N.Y. Aug. 17, 2015) (Francis, M.J.) (awarding the Plaintiff' attorneys a contingency fee of one-third to account for risks in litigation); *see also Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."). In light of the nature of the issues herein, and the extensive negotiations necessary to reach the agreed-upon settlement, Plaintiff's requested award is reasonable. *See Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. at 60; *see also McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). Additionally, Plaintiff have agreed to the fee provided for in the Agreement.

A brief biography of each Plaintiff's attorney who performed billed work in this matter is as follows:

      i.      Clela A. Errington is an associate at CSM Legal, P.C. She is a 2012 graduate of New York University School of Law. She began her career at Eisner & Mirer, P.C. specializing in labor law, followed by several years providing litigation support to large law firms including Cravath Swaine & Moore, LLP. She returned to active litigation practice in 2019, joining the Jones Law Firm, P.C., specializing in workers' and debtors' rights, followed by Michael Faillace & Associates in 2020 and CSM Legal, P.C. in 2021, practicing exclusively plaintiff-side wage and hour law. Her work is billed at the rate of $350 per hour and indicated by the initials "CE."

Should Your Honor have any questions or concerns regarding this settlement, the parties are happy to address them. The parties thank the Court for its attention to this matter.

                                    Respectfully submitted,

                                    /s/_____
                                  Clela Errington
                                  CSM LEGAL, P.C.
                                  Attorneys for the Plaintiff

Enclosures